IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

YVONNE DEERING,                          No. 2:07-CV-01521 JAM DAD

        Plaintiff,                    ORDER DENYING DEFENDANTS'
                                         MOTIONS TO DISMISS
    v.

LASSEN COMMUNITY COLLEGE
DISTRICT and HOMER CISSELL,

        Defendants.
_____/

The matter is before the Court on defendants Lassen Community College District ("District") and Homer Cissell's ("Cissell") (collectively "Defendants") motions to dismiss plaintiff Yvonne Deering's ("Deering") Third Amended Complaint ("TAC") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Deering opposes the motion.  For the reasons set forth below, the motions are DENIED.[1]

_____

[1] This motion was determined to be suitable for decision without oral argument.  E.D. Cal. L.R. 78-230(h).

1

I.   FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND

In 1999, Deering began her employment with Lassen Community College as a licensed practical nurse.  Her position was titled "Coordinator of Student Health Services."  In 2004, she took the position of Correspondence Secretary, which involved coordinating between 1,000 and 4,000 off-campus students in return for a $7,000 yearly stipend.  In 2007, the District changed her status to full-time Correspondence Secretary. Defendant Cissell was the President of Lassen Community College and the Superintendent of the District during the time in which the alleged incidents giving rise to this action occurred. Defendant Chris Alberico ("Alberico") was the Registrar of Lassen Community College.

On or about February 2003, Cissell allegedly threatened "layoffs" for persons who were not "loyal" or acting in deference to his policies.  In the fall of 2003, Deering received a layoff notice, but was never terminated.  During this time, Alberico allegedly told Deering that if she "stuck with him" her position would be protected.  Alberico also allegedly told Deering that he was Cissell's "right hand man" and that he could protect her.  According to Deering, Alberico required her to provide him sexual favors in exchange for protecting her position.  Deering claims that she provided sexual favors to

Alberico until she became too depressed and anxious to continue engaging in such behavior in October 2005.

Starting sometime in 2005, and continuing until July 3, 2007, Cissell allegedly told staff members at Lassen Community College that Deering provided sexual favors to Alberico in order to protect her job.  Cissell also allegedly made jokes to other staff members about Deering's relationship with Alberico to humiliate her.  In addition, Cissell allegedly required Deering to work under the supervision of Alberico's wife, Linda Alberico ("Linda"), from the fall of 2005 until Linda's retirement in 2007, even though he knew that Linda was aware of Deering's relationship with her husband and that Linda was intent on punishing her.  Deering alleges that Cissell told staff members at Lassen Community College that he placed her under the supervision of Linda to humiliate her.  Specifically, in the fall of 2006, Cissell purportedly told a member of the Board of Supervisors that he thought this assignment was "funny," "good punishment" and a way to keep Deering in line.

Beginning in the fall of 2005, Deering claims that she was threatened in her position, forced to do additional work for no additional pay, and treated with scorn and derision by Cissell, Alberico and Mary Elizabeth Alberico Berry Murphy ("Murphy"), Alberico's sister and the director of Human Resources at Lassen Community College.  Deering claims that Cissell and Alberico

harassed her and subjected her to adverse employment actions in order to humiliate and punish her for discontinuing sexual favors to Alberico.  Deering also claims that she was harassed by Linda in the form of unwarranted criticism, interference with her work product and requiring her to work additional hours.  In addition, Deering claims that Linda harassed her by engaging in unethical conduct; namely, befriending some of the students and changing their grades.  According to Deering, Linda's unethical conduct and Cissell's refusal to terminate her supervision of the correspondence program were acts of retaliation taken against her for the sexual favors she provided to Alberico and for exercising her right to be free from Alberico's sexual harassment.  Deering maintains that the abusive conduct engaged in by her coworkers caused her stress and resulted in a deterioration of her health.

Deering alleges that she repeatedly reported the abuse she suffered to her supervisor, Karen Grosz ("Grosz"), but the abusive conduct did not stop.  Deering further alleges that she was unable to file a complaint about the abusive conduct with Human Resources because Alberico's sister, Murphy, was the director of Human Resources.  According to Deering, Murphy threatened her and repeatedly told her that if she continued to complain about the discriminatory treatment she would punish her.  Deering maintains that the District knew about the hostile

work environment created by Cissell and others, via complaints made by Deering and several other District employees, but did nothing to stop the abusive conduct.

On February 7, 2007, Deering filed a claim with the United States Equal Employment Opportunity Commission ("EEOC").  She subsequently received a right-to-sue letter.  On February 16, 2007, Deering received notice that her claim against the District pursuant to California Government Code §§ 910 *et seq.* was rejected.  On July 26, 2007, Deering filed the instant action against the District, Alberico, Murphy and Cissell alleging the following claims: (1) violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), discrimination and harassment on the basis of gender; (2) breach of contract; (3) hostile work environment sexual harassment; and (4) intentional infliction of emotional distress.  On August 20, 2007, Alberico, Murphy and the District moved to dismiss the complaint.  On August 30, 2007, Deering received a right-to-sue letter from the California Department of Fair Employment and Housing ("FEHA").  On September 24, 2007, Deering filed a First Amended Complaint ("FAC").  The FAC, among other things, added a claim under California Education Code § 220 and specified that Deering's hostile work environment sexual harassment claim was premised on a violation of FEHA, Cal. Gov't.Code § 12940.  In October 2007, the District, Cissell,

5

Alberico and Murphy moved to dismiss the FAC.  On December 28, 2007, this Court issued an order granting in part and denying in part these motions.  On January 28, 2008, Deering filed a Second Amended Complaint ("SAC").  On February 7, 2008, the District, Cissell, Alberico and Murphy moved to dismiss the SAC.  On April 21, 2008, this Court issued an order granting in part and denying in part these motions.  On May 16, 2008, the parties entered into a stipulation whereby Alberico and Murphy were dismissed from this action with prejudice.  On May 16, 2008, the District and Cissell filed a motion for clarification, requesting this Court to clarify the dismissal orders issued on December 28, 2007 and April 21, 2008, respectively.  Specifically, the District and Cissell sought clarification as to which claims remained cognizable with respect to each defendant.  On June 30, 2008, this Court issued an order making the following findings: (1) Deering's sexual harassment claim under Title VII was dismissed with prejudice as to Cissell and was not dismissed as to the District; (2) Deering's Title VII sexual harassment claim predicated upon a theory of *quid pro quo* harassment was dismissed with prejudice on the basis that it was time-barred; (3) Deering had pled sufficient facts to state a cognizable retaliation claim against the District under Title VII and 42 U.S.C. § 1981; (4) Deering's hostile work environment sexual harassment and retaliation claims under FEHA were

dismissed without prejudice as to both Cissell and the District for failure to exhaust administrative remedies; (5) Deering's California Education Code § 220 claim was dismissed with prejudice as to Cissell and the District; (6) Deering's intentional infliction of emotional distress ("IIED") claim was dismissed, but leave to amend was proper; (7) Deering had pled sufficient facts to state a cognizable First Amendment retaliation claim under § 1983, but only against Cissell in his individual capacity; and (8) Deering is not entitled to seek punitive damages against the District.

On July 21, 2008, Deering filed a TAC, alleging the following claims for relief: (1) hostile work environment sexual harassment and retaliation in violation of Title VII and FEHA against the District (First, Second and Third Causes of Action, TAC); and (2) intentional infliction of emotional distress against the District and Cissell(Fourth Cause of Action, TAC). On July 30, 2008, the District filed a motion to dismiss the TAC pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  On August 6, 2008, Cissell filed a motion to dismiss the TAC pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  On August 13, 2008, Deering filed an opposition.

II. OPINION

A.   Legal Standard

"A Rule 12(b)(6) motion tests the legal sufficiency of a

claim.  A claim may be dismissed only if 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' "  <u>Navarro v. Block</u>, 250 F.3d 729, 732 (9th Cir. 2001).  Dismissal pursuant to Rule 12(b)(6) is appropriate where there is no cognizable legal theory or there is an absence of sufficient facts alleged to support a cognizable legal theory.  <u>Id.</u>  The issue is not whether a plaintiff is likely to succeed on the merits but rather whether the claimant is entitled to proceed beyond the threshold in attempting to establish his or her claims.  <u>De La Cruz v. Tormey</u>, 582 F.2d 45, 48 (9th Cir. 1978).

In considering a Rule 12(b)(6) motion, the allegations in the complaint must be construed in the light most favorable to the plaintiff, <u>Parks School of Business, Inc. v. Symington</u>, 51 F.3d 1480, 1484 (9th Cir. 1995), and the court accepts all material allegations as true, as well as all reasonable inferences to be drawn from them.  <u>Navarro</u>, 250 F.3d at 732; <u>Pareto v. FDIC.</u>, 139 F.3d 696, 699 (9th Cir. 1998).  The court, however, is not required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.  <u>Sprewell v. Golden State Warriors</u>, 266 F.3d 979, 988 (9th Cir. 2001).  Nor do courts assume the truth of legal conclusions merely because they are cast in the form of factual allegations, <u>Western Mining Council v. Watt</u>, 643 F.2d

618, 624 (9th Cir. 1981), or that a plaintiff can prove facts

different from those it has alleged.  <u>Associated Gen.</u>

<u>Contractors of California, Inc. v. California State Council of</u>

<u>Carpenters, Inc.</u>, 459 U.S. 519, 526 (1983).

B.   <u>FEHA Claims: Statute of Limitations</u>

The District argues that Deering's FEHA hostile work

environment sexual harassment and retaliation claims are time-

barred.

Under California law, the requirement of exhaustion of

administrative remedies under FEHA is a jurisdictional

prerequisite to resort to the courts.  <u>Johnson v. City of Loma</u>

<u>Linda</u>, 24 Cal.4th 61, 70 (2000).  It is generally a plaintiff's

burden to plead and prove timely exhaustion of administrative

remedies, such as filing a sufficient complaint with the

Department of Fair Employment and Housing ("DFEH") and obtaining

a right-to-sue letter.  <u>Westinghouse Elec. Corp. v. County of</u>

<u>Los Angeles</u>, 42 Cal.App.3d 32, 37 (1974).  Under FEHA, a

plaintiff must file an administrative complaint with the DFEH

within one year after the unlawful practice occurred.  Cal.

Gov't.Code § 12960(d).  The limitations period begins to run

after the unlawful employment practice occurs.  <u>Romano v.</u>

<u>Rockwell International, Inc.</u>, 14 Cal.4th 479, 492-93 (1996).

However, under the continuing violation doctrine, California

courts have recognized that employers will be "liable for

actions that take place outside the limitations period if these

actions are sufficiently linked to unlawful conduct that

occurred within the limitations period." Yanowitz v. L'Oreal

USA, Inc., 36 Cal.4th 1028, 1056 (2005).  Under the "continuing

violations" doctrine an employer's persistent failure to

eliminate a hostile work environment is a continuing violation

if the employer's unlawful actions are: (1) sufficiently similar

in kind to those within the statutory period; (2) have occurred

with reasonable frequency (recurring rather than isolated); (3)

and have not acquired a degree of permanence in the sense that

an employer's statements and actions make clear to a reasonable

employee that any further efforts to end harassment will be

futile.  Richards v. CH2M Hill, Inc., 26 Cal.4th 798, 823-24

(2001); see also Yanowitz, 36 Cal.4th at 1057-59 (2005) (holding

that the continuing violations doctrine may be applicable not

only to hostile work environment claims, but also to

discrimination and retaliation claims where a plaintiff alleges

a continuing course of unlawful conduct).

     In the present case, Deering alleges that she filed a

charge with the DFEH and was granted a right-to-sue letter on

August 30, 2007.  Although the allegations in the TAC do not

specify when Deering filed her administrative charge, and thus

the Court cannot determine the exact date in which the statute

of limitations begins, the Court can nonetheless determine

whether Deering's FEHA claims are time-barred.  Deering alleges

acts on the part of Cissell occurring within one year from

Deering's receipt of her right-to-sue letter that were

sufficiently similar, appear to have been reasonably frequent,

and had not acquired permanence before the statutory period.

The Court finds that the District has not established that

portions of Deering's hostile work environment sexual harassment

and retaliation claims occurring beyond the statutory period are

barred by the FEHA statute of limitations.  Accordingly, the

Court finds that Deering's FEHA claims are not time-barred.

C.   FEHA Claims: Prima Facie Case

     The District argues that dismissal of Deering's FEHA claims

is appropriate because Deering failed to allege sufficient facts

to state a prima facie claim of hostile work environment sexual

harassment or retaliation under FEHA.

     To establish a prima facie case of hostile work environment

harassment under FEHA, a plaintiff must plead facts

demonstrating: (1) she was subjected to verbal or physical

conduct because of her sex; (2) the conduct was unwelcome; and

(3) the conduct was sufficiently severe or pervasive to alter

the conditions of plaintiff's employment and create an abusive

working environment.  Manatt v. Bank of America, NA, 339 F.3d

792, 798 (9th Cir. 2003).  FEHA is not a general civility code.

Id.  "Simple teasing, offhand comments, and isolated incidents

(unless extremely serious) will not amount to discriminatory changes in the terms or conditions of employment." <u>Faragher v. City of Boca Raton</u>, 524 U.S. 775, 788 (1998).

Whether an environment is "hostile" or "abusive" can be determined only by looking at all the circumstances including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. <u>Lyle v. Warner Bros. Television Productions</u>, 38 Cal.4th 264, 283 (2006). In order to establish liability in a FEHA hostile work environment sexual harassment case, an employee must demonstrate that the conduct complained of was severe enough or sufficiently pervasive to alter the conditions of her employment and create a hostile or abusive work environment. <u>Id.</u> (italics omitted). A workplace may give rise to liability when it is permeated with discriminatory sex-based intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment. <u>Id.</u> at 279.

To establish a prima facie case of retaliation under FEHA a plaintiff must plead facts showing: (1) she engaged in a protected activity; (2) she suffered an adverse employment action; and (3) there was a causal connection between the two.

Raad v. Fairbanks North Star Borough School District, 323 F.3d 1185, 1196-97 (9th Cir. 2003); Yanowitz, 36 Cal.4th at 1042.  An employee's conduct may constitute protected activity for purposes of the anti-retaliation provision of the FEHA when the employee opposes conduct that the employee reasonably and in good faith believes to be discriminatory, whether or not the challenged conduct is ultimately found to violate the FEHA. Yanowitz, 36 Cal.4th at 1043.  "It is well established that a retaliation claim may be brought by an employee who has complained of or opposed conduct that the employee reasonably believes to be discriminatory, even when a court later determines the conduct was not actually prohibited by the FEHA." Id.  The proper standard for defining an "adverse employment action" under California law is the "materiality test," which requires that an employer's adverse action materially affect the terms and conditions of employment." See id. at 1036.  In Yanowitz, the court explained that FEHA protects an employee against unlawful discrimination with respect not only to ultimate employment actions such as termination or demotion, but also to the entire spectrum of employment actions that are reasonably likely to materially affect an employee's job performance or opportunity for advancement in his or her career. See id. at 1053-54.  Further, "there is no requirement that an employer's retaliatory acts constitute one swift blow, rather

than a series of subtle, yet damaging injuries.  Id. at 1055.

There, the Court noted that the collective impact of a series of

retaliatory acts may constitute sufficient adverse employment

action even if some of the acts individually would not.  Id. at

1055-56.  The Court concluded, "[e]nforcing a requirement that

each act separately constitutes an adverse employment action

would subvert the purpose and intent of the statute."  Id. at

1056 (footnote omitted).  In determining whether a plaintiff has

suffered an adverse employment action, "it is appropriate to

consider plaintiff's allegations collectively under the

totality-of-the circumstances approach."  Id. at 1052 n. 11.

In the present case, Deering alleges that Cissell and other

District employees created a hostile work environment by

humiliating and punishing her for engaging in and discontinuing

sexual favors to Alberico.  Deering alleges that she was

discriminated and treated in a derogatory manner because of her

gender insofar as she was treated differently than a "similarly

situated male employee," namely, Alberico.  Specifically,

Deering alleges that she was treated differently than male

employees in that she was denied assistance for her duties as

the Correspondence Secretary while male employees were routinely

given assistance to perform their duties.  Deering further

alleges that while Alberico sexual harassed her, his employment

status was protected and he was not subject to humiliation, nor

was he required to work additional hours or suffer interference
with his duties.  Deering also alleges that while Alberico has
received increases in his salary, she has not since 2004, even
though she had been given excellent evaluations as Coordinator
of Student Health Services and regular increases in salary until
2004.  In addition, Deering alleges that, following her
opposition to the sexual favors requested by Alberico, Cissell
intimidated and harassed her by threatening her employment.  He
also failed to: (1) provide her a competent performance
evaluation; (2) promote, or consider, her for a promotion or
salary increase; and (3) offer her compensation for the
additional work she was required to perform.  Deering alleges
that the retaliation she suffered for discontinuing sexual
favors to Alberico increased after she complained to Grosz and
filed complaints with the District and the EEOC.

Because the Court at this stage of the litigation must
accept the material allegations in the TAC as true, as well as
all reasonable inferences to be drawn from them, the Court finds
that Deering has pled sufficient facts to establish a prima
facie case of hostile work environment sexual harassment.
Although it is unclear from the allegations in the TAC as to the
exact frequency and severity of the alleged humiliating comments
and abusive conduct engaged in by Cissell, Alberico, Linda and
Murphy, the allegations in the TAC are sufficient to avoid

dismissal insofar as Deering alleges that she was subjected to a continuous course of conduct, including unwelcome intimidation, ridicule, insult and punishment based on her gender, and that such conduct altered the conditions of her employment by creating an abusive working environment.  Deering alleges that the repeated harassment and discrimination she endured from her coworkers has caused her to suffer severe stress as to alter the conditions of her employment.  The Court finds these allegations sufficient to survive a motion to dismiss.

As to Deering's retaliation claim, the Court finds that Deering has pled sufficient facts to establish a prima facie case of retaliation.  Deering alleges that she was retaliated against for opposing the *quid pro quo* harassment of Alberico. She further alleges that, as a result of her opposition to such harassment, she was subject to a retaliatory course of conduct, including pervasive workplace harassment, intimidation, ridicule, insult and punishment.  Deering alleges that she was retaliated against for opposing Alberico's harassment in the form of not being considered for a promotion, salary increase, or compensation for additional work she was required to perform.

To the extent the District argues that the allegations in the TAC are insufficient as a matter of law to constitute an adverse employment action, citing various cases, <u>see</u>, <u>e.g.</u>, <u>Thomas v. Department of Corrections</u>, 77 Cal.App.4th 507, 510-12

(2000); <u>Fisher v. San Pedro Hospital</u>, 214 Cal.App.3d 590, 615 (1989), the Court disagrees.  This case is not before the Court on a motion for summary judgment or for trial.  Deering alleges a continuing course of harassment, hostility, and retaliation, and has alleged intolerable working conditions in a manner sufficient to survive a motion to dismiss.  A complaint need not list every detail of the factual basis for the claim; it need only "fully [set] forth who is being sued, for what relief, and on what theory, with enough detail to guide discovery."  <u>See</u> <u>McHenry v. Renne</u>, 84 F.3d 1172, 1177 (9th Cir. 1996). Accordingly, because the acts of retaliation alleged by Deering, considered collectively, could constitute a sufficient adverse employment action under the relevant standard (materially affecting the terms, conditions, or privileges of employment), Deering has satisfied her burden, at the dismissal stage, of establishing an adverse employment action.  The Court cannot conclude, as a matter of law, that Deering will not be able to produce facts showing that she was subject to a series of retaliatory acts sufficient to constitute an adverse employment action as a result of opposing conduct that she reasonably believed to be discriminatory.

For these reasons, dismissal of Deering's FEHA hostile work environment sexual harassment and retaliation claims is not appropriate.

D.   IIED Claim

Defendants argue that dismissal of Deering's IIED claim is appropriate because Deering failed to plead a statutory basis for this claim, and because this claim is preempted by the Workers' Compensation Act.  Alternatively, Defendants argue that dismissal of Deering's IIED claim is appropriate because Deering failed to plead sufficient facts to state an actionable IIED claim.

1.  Immunity Under Gov't.Code § 815

Defendants argue that dismissal of Deering's IIED claim is appropriate because under Cal. Gov't.Code § 815, a public entity is not liable for an injury caused by the public entity or its employees "[e]xcept as otherwise provided by statute . . ." This argument is without merit.  The California Tort Claims Act provides that "[a] public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative."  Cal. Gov't.Code § 815.2(a).  Section 815.2(b) further provides "[e]xcept as otherwise provided by statute, a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability.  Cal. Gov't.Code § 815.2(b).

The District's immunity therefore turns on the immunity of its employees.  The District is immune from liability if, and only if, its employees are immune.  See Robinson v. Solano County, 278 F.3d 1007, 1016 (9th Cir. 2002) (noting that in government tort cases, the rule is liability, immunity is the exception).  Accordingly, because Defendants did not demonstrate that the District employees alleged to have engaged in the acts giving rise to this action are immune from liability as a matter of law, dismissal of Deering's IIED claim on this ground is not appropriate.

2. Preemption by the Workers' Compensation Act

Defendants argue that dismissal of Deering's IIED claim is appropriate because it is barred by the Workers' Compensation Act.  This argument is without merit.  Where a plaintiff can allege that she suffered emotional distress because of a pattern of continuing violations that were discriminatory, her cause of action for infliction of emotional distress will not be barred by the exclusivity provisions of workers' compensation laws.  Accardi v. Superior Court, 17 Cal.App.4th 341, 353 (1993) (holding that a claim for emotional and psychological damage arising out of employment is not barred by the Workers' Compensation Act, where the distress is engendered by an employer's illegal discrimination and sexual harassment); see also Jones v. Los Angeles Cmty. College District, 198 Cal.App.3d

794, 809 (1988) (statutory discrimination claims based on FEHA are exempt from the workers' compensation exclusivity). Accordingly, dismissal of Deering's IIED claim on this ground is not appropriate.

3. <u>Failure to State an IIED Claim</u>

Defendants argue that dismissal of Deering's IIED claim is appropriate because the conduct alleged in the TAC does not constitute "outrageous conduct" exceeding all bounds of decency usually tolerated in a civilized community.

The essential elements of a cause of action for intentional infliction of emotional distress are: (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) severe emotional distress; and (3) the plaintiff's injuries were actually and proximately caused by the defendant's outrageous conduct. <u>Berkley v. Dowds</u>, 152 Cal.App.4th 518, 533 (2007). Outrageous conduct is conduct "so extreme as to exceed all bounds of that usually tolerated in a civilized community." <u>Potter v. Firestone Tire & Rubber Co.</u>, 6 Cal.4th 965, 1001, (1993). Sexual harassment in the work place, by its very nature, is outrageous conduct as it exceeds all bounds of decency usually tolerated by a decent society. <u>Fisher</u>, 214 Cal.App.3d at 618. Thus, if properly pled, sexual harassment

will constitute the outrageous behavior element of a cause of action for intentional infliction of emotional distress.  <u>Id.</u> Because Deering has sufficiently pled a claim for hostile work environment sexual harassment, she has sufficiently alleged conduct satisfying the outrageous behavior element of her IIED claim.  Accordingly, dismissal of Deering's IIED claim on this ground is not appropriate.[2]

## III. ORDER

For the reasons set forth above, Defendants' motions to dismiss are DENIED.

IT IS SO ORDERED.

Dated:  October 14, 2008

_____
JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE

---

[2] To the extent Deering requests this Court to impose sanctions on Defendants under Rule 11 of the Federal Rules of Civil Procedure on the ground that Defendants have filed repetitive motions to dismiss for the purpose of "vexing, harassing and impeding the court process," the Court declines to do so.  Deering's failure to comply with the mandatory procedural requirements of Rule 11 make sanctions inappropriate. <u>See</u> <u>Radcliffe v. Rainbow Const. Co.</u>, 254 F.3d 772, 788-89 (9th Cir. 2001) (a request for Rule 11 sanctions must be made separately from other motions, must describe the specific conduct alleged to violate Rule 11(b), and must be served on the opposing party twenty-one days prior to filing).